# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| OCCIDENTAL HOTELES MANAGEMENT, S.L., f/k/a OCCIDENTAL HOTELES MANAGEMENT, S.A., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08 C 2165 |
| | ) | Judge Joan B. Gottschall |
| HARGRAVE ARTS, LLC and CARTER HARGRAVE, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This action was brought by Occidental Hoteles Management, S.L., f/k/a Occidental Hoteles Management, S.A. ("OHM") against defendants Hargrave Arts, LLC, and Carter Hargrave (collectively "Hargrave"). OHM alleges that Hargrave has violated OHM's trademark rights under the Lanham Act by maintaining a series of websites which violate OHM's copyrighted business name, "Occidental Hoteles and Resorts." The websites maintained by Hargrave have the titles, "www.occidentalhotels.net," "www.occidentalhotels.us," and "www.occidental-resorts.net." OHM's own websites are titled "www.occidental-hoteles.com" and "www.occidentalhotels.com."

OHM is organized under the laws of Spain, with its principal place of business in Spain. Hargrave Arts, LLC has only one member, Carter Hargrave, who is a citizen of Oklahoma. Hargrave has moved to dismiss this action for lack of personal jurisdiction. In the alternative, Hargrave asks this court to transfer this action to the District Court of Oklahoma pursuant to 28 U.S.C. § 1404. OHM requested permission to conduct limited discovery related to personal jurisdiction before responding to Hargrave's motion, which this court permitted. Discovery closed in December, 2008. Hargrave then withdrew a previously-filed *pro se* motion, retained counsel, and

filed a new motion to dismiss or transfer venue in February, 2009. OHM opposes Hargrave's motion and alternatively seeks to have the matter transferred to Oklahoma.

## I. BACKGROUND

The three websites maintained by Hargrave are not flattering to OHM. The three web addresses link to an identical web page, which among other things contains information about the death of a boy who was vacationing at an OHM resort in Mexico. Hargrave's sites suggest that OHM may have negligently contributed to the boy's death, and suggest that OHM acted with indifference to the boy's family as the event occurred. The web page also contains contact information for OHM, though no particular call to action appears on the page. Before the addresses, the web page states, "This way you can contact them so they can deny who they are to your face when you have problems." The web page is informational only; it does not contain any interactive features or commercial activity.

Hargrave maintains several sites aside from the three referenced above. On Hargrave's other sites he sells products and services related to the martial arts. Hargrave advertises on these sites that he will ship products throughout the United States and internationally. The products available on the various sites range from training manuals and videos demonstrating martial arts techniques, to enrollment in classes taught by Hargrave, to a website promoting the "World Jeet Kune Do Federation" ("WJKDF") to a website selling Bruce Lee paraphernalia. Only one of these sites makes any specific reference to the state of Illinois; the site promoting the WJKDF has a page which permits Jeet Kune Do instructors to be listed. Included in the list is one individual in Illinois. *See* Ex. N. to Pl.'s Resp. Br. at 25–26 (Doc. No. 37-15). The website states that these instructors have been certified by the WJKDF, that prospective students will be referred to these instructors, and that the instructors' websites must carry a WJKDF logo and have a link to WJKDF. Further details

about Hargrave's interactions with the individuals from Illinois are not in the record. Aside from this one example, Hargrave does not have any direct contact with the state of Illinois.

## II. ANALYSIS

"'[W]hen the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff need only make out a prima facie case of personal jurisdiction.'" *Richter v. INSTAR Enter. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1005 (N.D. Ill. 2009) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)) (modifications in original). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record[,]' [but] 'the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs.'" *Id.* (citations omitted).

This matter involves a federal cause of action, and Rule 4(k)(1) permits a federal court to exercise jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1); *Richter*, 594 F. Supp. 2d at 1005. The court therefore looks to Illinois' long-arm statute, which stretches as far as the due process clauses of the Illinois and federal Constitutions permit. 735 Ill. Comp. Stat. 5/2-209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."); *Richter*, 594 F. Supp. 2d at 1006 (citing and quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002)). Neither party here has suggested the Illinois Constitution is more restrictive on personal jurisdiction than is the federal Constitution, and although the Illinois Supreme Court has declined to find that the two constitutions are coterminous on this issue, it has observed that "in almost all cases, when federal

due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns regarding personal jurisdiction." *Keller v. Henderson*, 834 N.E.2d 930, 941 (2005)). This court's own analysis will focus exclusively on the federal due process standard because if it is not satisfied (and it is not), the requirements of the Illinois Constitution will be immaterial.

There are two types of personal jurisdiction: specific and general. "General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State, and is permitted only where the defendant conducts continuous and systematic general business within the forum state." *Richter*, 594 F. Supp. 2d at 1006 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997)). Specific jurisdiction "'refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* (quoting *RAR*, 107 F.3d at 1277)).

Before turning to the specific inquiries over general and specific jurisdiction, a more fundamental argument by OHM must be addressed. OHM sought discovery from Hargrave related to Hargrave's contacts with this forum, and OHM maintains that Hargrave's responses to its inquiries were so defective that Hargrave "demonstrated either a fundamental misunderstanding of the discovery process or a deliberate attempt to circumvent it." Pl.'s Resp. Br. 2. OHM asks this court to sanction Hargrave by exercising jurisdiction over it, regardless of what contacts Hargrave actually has with this forum. Such a sanction is at least feasible, and OHM points to several cases where this sanction has been used. *See, e.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695–708 (1982) (affirming decision to exercise jurisdiction after defendant repeatedly refused to comply with discovery orders).

There may be some truth to OHM's argument that Hargrave's responses to OHM's discovery requests were incomplete. To give just one example, Hargrave responded to numerous requests by OHM regarding Hargrave's business activities that Hargrave "do[es] not have business in Illinois

4

only in Oklahoma." *See, e.g.*, Def.'s Answers to Interrogs. 18–20, 23 (Doc. No. 37-6). These answers appear to misunderstand the core question at issue here and discussed in greater detail below: whether sales from Hargrave's websites establish sufficient contacts with this forum to confer general jurisdiction. Hargrave maintains websites which seek to sell products not only throughout the United States, but throughout the world. For Hargrave's answers to be accurate, he must have (1) never sold any products to a person or individual in Illinois, and (2) never sold anything to anyone outside of the state of Oklahoma. The second proposition in particular is conceivable for a brick-and-mortar store, but is unfathomable for an internet business designed to sell merchandise and other goods and services.[1]

Yet OHM's request for sanctions is off the mark. The proper mechanism for presenting discovery disputes to a court is a Rule 37 motion to compel, not a response to a motion to dismiss. Indeed, the lead case cited by OHM, *Insurance Corporation of Ireland*, involved repeated warnings by the district court that if the defendant did not comply with outstanding discovery requests, jurisdiction would be exercised. 456 U.S. at 698–99. In this matter, discovery closed on December 15, 2008, and by agreement of the parties, the instant motion to dismiss or transfer by Hargrave was not filed until February 27, 2009. OHM did not file any motion to compel or otherwise object to the discovery shortcomings of Hargrave, which is an especially problematic oversight given that the record reflects Hargrave was proceeding *pro se* when he responded to the discovery requests. Of course, *pro se* parties are obligated to abide by the same discovery rules as are parties represented

---

[1] However, some of OHM's interrogatories were also impermissibly broad. For example, OHM asked Hargrave to "[i]dentify all facts, documents and persons with knowledge relating to Defendants' consideration, selection, clearance, adoption and first use of the 'Occidental' marks, and 'Occidental' names in the Infringing Web Sites." *See id.* No. 7. This question is not "reasonably calculated to lead to the discovery of . . . evidence" related to Hargrave's contacts with this forum. *Cf.* Fed. R. Civ. P. 26(b)(1).

by counsel, but Hargrave's status emphasizes the significance of OHM's failure to invoke Rule 37 procedures. OHM's arguments regarding discovery are too late. Hargrave has not waived his right to contest jurisdiction.

OHM argues that based on the web sales conducted by Hargrave, this court should find that general jurisdiction over Hargrave exists in Illinois. For general jurisdiction over a defendant to be appropriate, its "business contacts in Illinois must be intentional, continuous, and substantial rather than inadvertent, trivial, or sporadic, continue up to the time of suit, and evidence a purpose on the part of the defendant to avail himself of the protection of the laws of Illinois." *Richter*, 594 F. Supp. 2d at 1006 (citations omitted). Generally the following factors will be considered: "(1) whether defendants maintain offices or employees in Illinois; (2) whether defendants send agents into Illinois to conduct business; (3) whether defendants have designated an agent for service of process in Illinois; (4) whether defendants advertise or solicit business in Illinois; and (5) the extent to which defendants conduct business in Illinois." *Id.* (citations omitted).

There is no allegation that Hargrave maintains an office or employees in Illinois. Nor has Hargrave designated an agent for services of process in this forum. However, Hargrave has established some sort of business relationship with a WJKDF instructor in this forum, though the exact contours of this relationship are unknown.

OHM contends that this relationship, combined with the numerous sales-related websites maintained by Hargrave, have subjected it to general jurisdiction here. OHM relies especially on *George S. May Int'l Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052 (N.D. Ill. 2006), which found that an interactive website selling merchandise to individuals within Illinois, in combination with efforts to solicit business from Illinois law firms, could subject a company to general jurisdiction. *Id.* at 1057–58.

The issue of whether interactive websites are sufficient to subject the owner of the website to personal jurisdiction "remains an emerging area of jurisprudence in Illinois," and throughout the country. *See Richter*, 594 F. Supp. 2d at 1007. Courts in this district have generally adopted the sliding scale test used by the court in *George S. May*, which was first articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). In *Zippo*, the court envisioned the following spectrum of possible web sites, and corresponding authority to find jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 1124. This same basic test has been used repeatedly in the Northern District of Illinois. *See Richter*, 594 F. Supp. 2d at 1007 (collecting cases).

Many of the websites maintained by Hargrave are commerce-oriented, and appear to be interactive, permitting the sale of items to customers throughout the United States and internationally. The record does not establish what volume of sales, if any, occurred in Illinois. The only fact that connects Hargrave to Illinois is a listing on the WJKDF website of purported Jeet Kune Do instructors who reside in Illinois, and WJKDF is a federation Carter Hargrave purports to represent.

Regardless, the *Zippo* line of cases has been found by most courts to confer specific jurisdiction, not general jurisdiction. *See Richter*, 594 F. Supp. 2d at 1008. The *Zippo* case involved

specific jurisdiction. 952 F. Supp. at 1127. In *George S. May*, general jurisdiction was found, but this was based on both internet-related activity and efforts to solicit contracts from two Illinois businesses. 409 F. Supp. 2d at 1060. Possibly if the record were more fully developed, it could be shown that Hargrave's relationship with the Illinois JKD instructors would represent a similar effort to solicit business in Illinois. Yet the website states that any "JKD instructor" who wishes to be listed must merely "send . . . an email with [the instructor's] lineage and ranking, etc." This evidence does not come close to establishing that Hargrave has conducted "continuous and systematic general business within the forum state," which is required for general jurisdiction. *Richter*, 594 F. Supp. 2d at 1006.

Nor does this court have specific jurisdiction. The sites that OHM alleges violate their trademark rights do not involve any commercial or interactive activity. They are passive websites, which the Seventh Circuit has ruled do not confer specific jurisdiction. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004) (finding website that advertised products only was insufficient for specific jurisdiction). OHM attempts to argue that this case is unique since the boy referenced in Hargrave's websites, who died at an OHM resort, was from Illinois. Taking this as true—though the court has no evidence other than its own internet searches to verify this fact—it is without merit. The offending websites talk about the boy's death, but there is no reason to think that a person in Illinois who knows the boy's name would therefore navigate "www.occidentalhotels.net" to find out more background information. The target audience for the website is not people who are aware of the boy's death (who may be predominantly located in Illinois), but rather people who are interested in Occidental Hotels and Resorts. Maybe this strengthens OHM's merits claim, but it does nothing to suggest that Hargrave either purposefully availed himself of the privilege of conducting activities within the forum, or that exercising

jurisdiction over Hargrave would comport with traditional notions of fair play and substantial justice. *Id.* (citations omitted). Specific jurisdiction over this matter is lacking.

Both parties ask us in the alternative to transfer this matter to Oklahoma under § 1404(a). Section 1404(a) provides no relief, however, for a prerequisite to transfer under this statute is a finding that venue is proper here. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) ("A federal district court, in which a suit is filed with proper venue, may '[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought.'") (quoting 28 U.S.C. § 1404(a)). Venue is not proper since personal jurisdiction over the defendants is lacking. *See* 28 U.S.C. §§ 1391(b) (venue proper where defendant resides); (c) (defendant corporation resides where personal jurisdiction is proper). However a court that lacks jurisdiction "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. This matter has already languished in this forum for fifteen months, and there is no reason to burden OHM with additional delay in serving Hargrave for a second time.

Hargrave asks this court, if it is going to transfer the case, to transfer to "the Oklahoma federal district court." As Hargrave resides in Tulsa, this matter will be transferred to the district court for the Northern District of Oklahoma, which is located in Tulsa.

### III. CONCLUSION

Hargrave's motion to dismiss or transfer is granted. The Clerk is directed to transfer this case to the Northern District of Oklahoma.

ENTER:

_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 24, 2009